**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------

ELAINE WANG,                                    :
                                                :
                  Plaintiff,                    :   Civil Action No. 1:21-cv-5672
                                                :
v.                                              :   **COMPLAINT FOR VIOLATIONS OF**
                                                :   **SECTIONS 14(a) AND 20(a) OF THE**
CIMAREX ENERGY CO., THOMAS E.                   :   **SECURITIES EXCHANGE ACT OF**
JORDEN, PAUL N. ECKLEY, HANS                    :   **1934**
HELMERICH, KATHLEEN A. HOGENSON,                :
HAROLD R. LOGAN, JR., FLOYD R.                  :   **JURY TRIAL DEMANDED**
PRICE, MONROE W. ROBERTSON, LISA                :
A. STEWART, and FRANCES M. VALLEJO,             :
                                                :
                  Defendants.                   :
-------------------------------------------------------  :

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Cimarex Energy Co. ("Cimarex or the

"Company") and the members Cimarex's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed merger between Cimarex and Cabot Oil & Gas Corporation and its affiliates ("Cabot").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on June 29, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Double C Merger Sub, Inc., a wholly owned subsidiary of Cabot, will merge with and into Cimarex with Cimarex surviving as a wholly owned subsidiary of Cabot (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Cimarex stockholder will receive 4.0146 Cabot shares (the "Merger Consideration").

3.      As discussed below, Defendants have asked Cimarex's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Tudor, Pickering, Holt & Co. ("TPH") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Cimarex's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's proxy solicitor and Cabot's proxy solicitor are both headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Cimarex stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Thomas E. Jorden has served as a member of the Board since August 2012 and is the Chairman of the Board, and the President and Chief Executive Officer of the Company.

11.     Individual Defendant Thomas E. Jorden has served as a member of the Board since June 2008.

12.     Individual Defendant Paul E. Eckley has served as a member of the Board since May 2019.

13.     Individual Defendant Hans Helmerich has served as a member of the Board since 2002.

14.     Individual Defendant Kathleen A. Hogenson has served as a member of the Board since September 2019.

15.     Individual Defendant Harold R. Logan, Jr. has served as a member of the Board since December 2012.

16.     Individual Defendant Floyd R. Price has served as a member of the Board since 2002.

17.     Individual Defendant Monroe W. Robertson has served as a member of the Board since 2005.

18.     Individual Defendant Lisa A. Stewart has served as a member of the Board since October 2015.

19.     Individual Defendant Frances M. Vallejo has served as a member of the Board since May 2017.

20.     Defendant Cimarex a Delaware corporation and maintains its principal offices at 1700 Lincoln Street, Suite 3700, Denver, Colorado 80203.  The Company's stock trades on the New York Stock Exchange under the symbol "XEC."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

23.     Cimarex operates as an independent oil and gas exploration and production company primarily in Texas, Oklahoma, and New Mexico. As of December 31, 2020, it had a total proved reserves of 531.0 million barrels of oil equivalent; 1.36 trillion cubic feet of proved gas

4

reserves; 144.1 million barrels (MMBbls) of proved oil reserves; and 159.8 MMBbls of natural

gas liquids reserves primarily located in the Permian Basin and Mid-Continent regions. The

Company also owned an interest in 2,765 net productive oil and gas wells. Cimarex was founded

in 2002 and is headquartered in Denver, Colorado.

24.     On May 24, 2021, the Company and Cabot jointly announced the Proposed

Transaction:

> HOUSTON and DENVER, May 24, 2021 /PRNewswire/ -- **Cabot
> Oil & Gas Corporation ("Cabot") (NYSE: <u>COG</u>) and Cimarex
> Energy Co. ("Cimarex") (NYSE: <u>XEC</u>)** today announced that
> they have entered into a definitive agreement whereby the
> companies will combine in an all-stock merger of equals. The
> combination will bring together two industry-leading operators with
> top-tier oil and natural gas assets to create a diversified energy leader
> that is positioned to drive enhanced free cash flow generation and
> returns for investors through market cycles.

> Under the terms of the agreement, which has been unanimously
> approved by the Boards of Directors of both companies, Cimarex
> shareholders will receive 4.0146 shares of Cabot common stock for
> each share of Cimarex common stock owned. The exchange ratio,
> together with closing prices for Cabot and Cimarex on May 21,
> 2021, reflects an enterprise value for the combined companies of
> approximately $17 billion. Upon completion of the transaction,
> Cabot shareholders will own approximately 49.5% and Cimarex
> shareholders will own approximately 50.5% on a fully diluted basis.

> "The combination of Cabot and Cimarex will create a free cash flow
> focused, diversified energy company with the scale, inventory and
> financial strength to thrive across commodity price cycles," Dan O.
> Dinges, Chairman, President and CEO of Cabot. "The combined
> business will be overseen by an experienced Board and a
> management team that is committed to a prudent strategy built on
> disciplined capital investment, strong free cash flow generation and
> increasing returns to shareholders. With its premier assets, increased
> resource diversity and a strong financial foundation, the company
> will be well positioned to deliver long-term value creation for its
> shareholders and other stakeholders."

"This transformational merger will combine our top-tier assets and advance our shared focus on delivering superior returns for investors," said Thomas E. Jorden, Chairman, President and CEO of Cimarex. "We're building an even more resilient platform with greater financial strength in order to deliver sustainable, through-cycle returns on and of capital. We view commodity, geography and asset diversification as strategic advantages that will drive more resilient free cash flow and long-term value creation. We are aligned on our commitment to ESG and sustainability and look forward to bringing our talented teams together to unlock the tremendous potential of this compelling combination."

**Strategic and Financial Benefits of Creating a Free Cash Flow Focused, Diversified Oil & Gas Producer**

- **Premier Multi-Basin Exposure Will Enhance Scale, Diversity and Capital Optionality:** With Cabot's approximately 173,000 net acres in the Marcellus Shale and Cimarex's approximately 560,000 net acres in the Permian and Anadarko basins, the combined business will have a multi-decade inventory of high-return development locations in the premier oil and natural gas basins in the United States.

- **Attractive and Sustainable Free Cash Flow Profile:** Executing a disciplined capital allocation and reinvestment strategy, the combined business will be positioned to capitalize on its high-quality assets and diversification to drive through-cycle free cash flow generation across a wide range of commodity price scenarios. The company's low-cost and capital efficient inventory is expected to support its robust, cumulative free cash flow outlook of approximately $4.7 billion of free cash flow from 2022 to 2024 based on $55 per barrel WTI oil prices and $2.75 per MMBtu NYMEX natural gas prices.

- **Positioned to Accelerate the Return of Capital to Shareholders:** The combined business will be well positioned to deliver enhanced capital returns to shareholders across a full range of market conditions through a multi-faceted program offering a sustainable base dividend that is positioned to grow over time, a variable dividend and a special dividend. The new business is expected to have an annual base dividend of $0.50 per share (representing a forward dividend yield of 2.8%), which is paid quarterly, and plans to supplement the base dividend with a quarterly variable dividend to achieve a target capital return of at least 50% of quarterly free cash flow, with the first payment expected in the first quarter of 2022. The combined business also plans to declare and pay a $0.50 per share special dividend to all

common shareholders of the combined business promptly after the closing of the transaction.

- **Substantial Cost Saving Opportunity:** The companies are targeting annual general and administrative cost synergies of $100 million beginning within 18 months to two years following the closing.
- **Strong Balance Sheet:** The combined business is expected to have a strong capital structure with minimal near-term debt maturities and a low cost of capital. Upon closing, the combined business is anticipated to have pro forma liquidity of $2.2 billion and will target a net debt-to-EBITDAX ratio of less than 1.0x. This strong financial foundation and broader scale is expected to provide flexibility and optionality for capital deployment.
- **Commitment to ESG and Sustainability:** Cabot and Cimarex share commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on the two companies' ongoing ESG efforts by, among other things, continuing to link executive compensation to ESG performance and maintaining strong board oversight of ESG risks and programs. The combined business is expected to report sustainability metrics pursuant to SASB and TCFD standards.

**Headquarters, Leadership and Governance**

The combined business, which will operate under a new name, plans to be headquartered in Houston and maintain its regional offices.

Upon closing, Mr. Dinges will serve as Executive Chair of the Board of Directors of the newly combined business and Mr. Jorden will lead the company as CEO and will serve on the Board of Directors. Scott Schroeder, Cabot's current Chief Financial Officer, will serve as CFO of the combined business. The remainder of the company's leadership team will include executives from both Cabot and Cimarex.

The Board of Directors of the company will be composed of five directors from the current Cabot Board of Directors, including Mr. Dinges, and five directors from the current Cimarex Board of Directors, including Mr. Jorden.

**Timing and Approvals**

The transaction is expected to close in the fourth quarter of 2021, subject to regulatory clearance, the approval of Cabot and Cimarex common shareholders and the satisfaction of other customary closing conditions.

Both Cabot and Cimarex intend to continue paying base quarterly cash dividends through closing.

* * *

**Advisors**

J.P. Morgan Securities LLC is serving as financial advisor to Cabot and Baker Botts L.L.P. is serving as its legal counsel. Tudor, Pickering, Holt & Co. is serving as financial advisor to Cimarex and Wachtell, Lipton, Rosen & Katz is serving as its legal counsel.

* * *

25.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Cimarex's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

26.     On June 29, 2021, Cimarex and Cabot jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the

Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by TPH in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Cabot Projections") and provided them to the Board and TPH by management of both Cimarex and Cabot with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections and the Cabot Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: EBITDAX; and Unlevered Free Cash Flows as calculated by each of the Company's and Cabot's financial advisors, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

31.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.     With respect to TPH's *Net Asset Value Analysis*, the Registration Statement fails to disclose: (i) the reason why the Cimarex corporate forecast and the Cabot corporate forecase were

not used in the analysis; (ii) line items used to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the discount rates ranging from 8.00% to 9.75% for Cimarex and 6.50% to 8.00% for Cabot; (iv) the weighted average costs of capital for Cimarex and Cabot (v) the present value of the cash flows generated by the estimated proved developed reserves and undeveloped hydrocarbon resources; (vi) the present value of future estimated effects of hedging; (vii) the present value of future estimated effects of general and administrative expenses, taxes and non-drilling and completion capital expenditures; and (viii) the net debt of Cimarex and Cabot and the preferred equity of Cimarex.

33.     With respect to TPH's *Discounted Cash Flow Analyses*, the Registration Statement fails to disclose: (i) the terminal values of the Company and Cabot as of December 31, 2024; (ii) line items used to calculate the projected unlevered free cash flows; (iii) the inputs and assumptions underlying the after-tax discount rates ranging from 8.00% to 9.75% for Cimarex and 6.50% to 8.00% for Cabot; (iv) the inputs and assumptions underlying the use of the EV/EBITDAX multiples ranging from 4.50x to 5.50x for Cimarex and 6.00x to 7.50x for Cabot; (v) Cimarex's and Cabot's net debt and Cimarex's preferred equity; (vi) number of fully diluted outstanding shares of Cimarex and Cabot common stock.

34.     With respect to TPH's *Has/Gets Analysis – NAV Accretion*, the Registration Statement fails to disclose: (i) the net asset values of Cimarex and Cabot on a standalone basis; (ii) the estimated fees and expenses related to the Proposed Transaction; (iii) the basis for applying the discount rate ranging from 7.3% to 8.9% (range A) and 6.5% to 8.0% (range b); (iv) the pro forma share count.

35.     With respect to TPH's *Equity Research Analysts' Price Targets* analysis, the Registration Statement fails to disclose: (i) the 25 analyst price targets per share of Cimarex

common stock and the identity of the corresponding equity research analysts; (ii) the 23 analyst price targets per share of Cabot common stock and the identity of the corresponding equity research analysts.

36.    With respect to the engagement of TPH, the Registration Statement fails to disclose whether in the two years prior to the delivery of the fairness opinion to the Board, TPH provided financial, investment, or any other services to the Company and/or to Cabot and their respective affiliates, and the total compensation earned by TPH for those services received from the Company and Cabot and their affiliates, if any.

37.    In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**COUNT II**</u>

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Cimarex within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Cimarex, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cimarex, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cimarex, and, therefore, is presumed to have had the

power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

48.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 30, 2021                          **MELWANI & CHAN LLP**

                              By:   */s/ Gloria Kui Melwani*
                                    Gloria Kui Melwani
                                    1180 Avenue of the Americas, 8th Fl.
                                    New York, NY 10036
                                    Telephone: (212) 382-4620
                                    Email: gloria@melwanichan.com

                                    *Attorneys for Plaintiff*